# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

|  |  |
|---|---|
| **MORRIS CLEVELAND,** | |
| *Plaintiff,* | **CIVIL ACTION NO.** |
| **v.** | **3:26-cv-00025-TES** |
| **CHIEF JUDGE RAYMOND GEORGE,** *et al.,* | |
| *Defendants.* | |

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Pro se Plaintiff Morris Cleveland filed a Complaint on March 4, 2026, against

Defendants Raymond George, John Fry, Harvey Wasserman, R. Chris Phelps, Chad

Hunt, Megan Whetsel, Kevin McFarland, George Albert Jr., Kevin Ellison, Bradford

Farris, Stacy Jarrard, Rita Harkins, Jeffery Langley, Blair Mahaffey, Chris Carroll, Susan

McGill, Hart County Georgia, Baldwin County Alabama, and Lumpkin County

Georgia—19 in total. [Doc. 1]. He brings claims for false arrest, unreasonable search,

equal protection violations, violation of the "Georgia Civil Rights Act," civil rights

conspiracy, defamation, fraud, malicious prosecution, abuse of process, unjust

enrichment, municipal liability, invasion of privacy, constructive fraud, and

supervisory liability. [*Id.* at pp. 34–50]. All 19 Defendants have now filed motions to

dismiss, which are ripe for review. [Doc. 15]; [Doc. 17]; [Doc. 33]; [Doc. 37]; [Doc. 38]; [Doc. 41].

## **LEGAL STANDARD**

Through Rule 12(b)(6), a defendant may "test the facial sufficiency" of a complaint by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). However, a complaint will survive a Rule 12(b)(6)-based motion if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations

2

adopted). When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Twombly*, 550 U.S. at 572. In accepting the factual allegations as true, courts are to construe the reasonable inferences from them in the light most favorable to a plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Therefore, to decide whether a complaint survives a motion to dismiss, courts use a two-step framework. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* A plaintiff may use legal conclusions to structure a complaint, but they *must* "be supported by factual allegations." *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). When drafting a complaint, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Finally, the issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to

3

support the claims." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. A complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up).

## FACTUAL BACKGROUND

Much of Plaintiff's 264-paragraph Complaint consists of conclusory allegations, legal conclusions, and Plaintiff's recitations of the law. With that said, he does have some factual allegations. On August 4, 2020, Defendant Albert arrested Plaintiff. [Doc. 1, ¶ 105]. Defendants Ellison and Farris were also present during Plaintiff's arrest. [*Id.* at ¶ 106]. He was held in custody overnight, and non-party Judge Randy Pruitt held Plaintiff's bond hearing the next day. [*Id.* at ¶ 108]. Plaintiff was charged with aggravated assault, cruelty to children in the third degree, and false imprisonment. [*Id.* at ¶ 109]. Judge Pruitt set bond at $10,200 and prohibited Plaintiff from possessing any weapons, violating any law while the charges were pending, and contacting his wife and daughter. [*Id.* at ¶¶ 109–10]. Plaintiff also had to remain at least 100 yards from their residence. [*Id.* at ¶ 110].

On August 19, 2020, Defendant George—the Chief Judge of the Superior Court of Lumpkin County, Georgia—held a hearing on a temporary protective order ("TPO"). [*Id.* at ¶ 111]. Defendant George granted the TPO and awarded Plaintiff's wife custody

of their daughter. [*Id.* at ¶ 113]. He also denied Plaintiff visitation rights. [*Id.*]. During the hearing, Plaintiff's wife served him with divorce papers. [*Id.* at ¶ 114].

On September 5, 2020, Plaintiff paid an unnamed Lumpkin County Sheriff's Deputy $120 to accompany him to the marital residence to retrieve his belongings. [*Id.* at ¶ 115]. His wife refused to let him in the house, and the deputy "declined to assist further." [*Id.* at ¶ 116]. Ten days later, Plaintiff completed an anger management evaluation. [*Id.* at ¶ 117]. The evaluator suggested Plaintiff complete a 24-week family violence intervention program to satisfy court requirements. [*Id.* at ¶ 119]. On September 24, 2020, Judge Pruitt held a committal hearing. [*Id.* at ¶ 120]. According to Plaintiff, the court found that there was "probable cause for false imprisonment and cruelty to children." [*Id.* at 121].

On February 23, 2021, Plaintiff was indicted for aggravated assault, false imprisonment, family violence, and cruelty to children in the third degree. [*Id.* at ¶ 124]. A few weeks later, Defendant George held Plaintiff in contempt and ordered him to pay attorney's fees. [*Id.* at ¶ 125]. Plaintiff entered a not guilty plea on March 19, 2021. [*Id.* at ¶ 127]. On August 3, 2022, Plaintiff once again paid a deputy to accompany him to collect his belongings, and his wife once again refused to allow him into the house. [*Id.* at ¶ 131]. He was never able to recover his personal property. [*Id.* at ¶ 142]. Plaintiff ended up pleading guilty, and was sentenced to 12 months of probation, fined $1,000, and ordered to complete 100 hours of community service. [*Id.* at ¶ 135].

On July 14, 2022, Plaintiff received a final decree of divorce. [*Id.* at ¶ 139]. From the divorce, Plaintiff's wife received the marital residence and timeshares. [*Id.* at ¶ 140]. Plaintiff retained his family home and rental properties and was ordered to pay his now-ex-wife $6,000. [*Id.*]. He and his ex-wife were granted joint legal custody and decision-making authority of their daughter, but his ex-wife was given final decision-making authority. [*Id.* at ¶ 141]. Plaintiff was allowed visitation once per month, but his ex-wife then moved to Alabama. [*Id.*]. Plaintiff now states he is making child support payments to both Georgia and Alabama simultaneously. [*Id.* at ¶ 60].

On April 8, 2024, the Georgia Department of Human Services, Child Support Division, sent Plaintiff notice that his driver's license was suspended due to nonpayment of child support. [*Id.* at ¶ 144]. Defendant Fry—an Administrative Law Judge—denied Plaintiff's motion to compel and granted a motion to quash his requests for information and subpoenas on August 20, 2024. [*Id.* at ¶ 145]. On September 19, 2024, Defendant Fry suspended Plaintiff's driver's license. [*Id.* at ¶ 151]. One month later, Plaintiff filed a petition for judicial review in the Hart County Superior Court, stating that Defendant Fry altered the recording of his hearing. [*Id.* at ¶¶ 146–148, 152]. Defendant Wasserman—a Judge in the Superior Court of Hart County, Georgia—held a hearing on Plaintiff's petition on February 17, 2025. [*Id.* at ¶ 153]. During the hearing, Defendant Wasserman removed Plaintiff from the courtroom. [*Id.* at ¶ 156]. In April of 2025, Plaintiff reported Defendant Wasserman to the Judicial Qualifications

Commission, but his complaint was dismissed. [*Id.* at ¶ 158]. Almost one year later, he filed his Complaint in this court.

## DISCUSSION

To start, the Court previously ordered Plaintiff to show cause why it should not strike his Recast Complaint for being filed untimely without permission and for being a shotgun pleading. [Doc. 47]. In his Response, Plaintiff states that his Recast Complaint is substantively identical to his original Compliant, and he only filed the Recast Complaint because his original Complaint was missing notarization. [Doc. 56, pp. 1–2]. Accordingly, the Court **STRIKES** Plaintiff's Recast Complaint [Doc. 45] for the reasons detailed in its Order to Show Cause.

Moving on, Defendants' motions to dismiss contain a myriad of arguments. All are adequate grounds for dismissal. For the sake of clarity, the Court grants dismissal for each Defendant for the following reasons:

The "Alabama Defendants"

-Susan McGill:                          Lack of Personal Jurisdiction

-Baldwin County, Alabama:               Lack of Personal Jurisdiction

The "Judicial Defendants"

-Chief Judge Raymond George:            Judicial Immunity

-Judge John Fry:                        Judicial Immunity

-Judge Harvey Wasserman:                Judicial Immunity

-Judge Chris Phelps:                    Judicial Immunity

The "Prosecutor Defendants"

-Chad Hunt                              Prosecutorial Immunity

-Megan Whetsel:                         Prosecutorial Immunity

-Kevin McFarland:                       Prosecutorial Immunity

-Jeffery Langley:                       Prosecutorial Immunity

-Blair Mahaffey:                        Prosecutorial Immunity

The "Georgia Counties"

-Lumpkin County, Georgia:               Failure to State a Monell Claim

-Hart County, Georgia:                  Failure to State a Monell Claim

The "Law Enforcement Defendants"

-George Albert, Jr.:                    Heck Barred, Statute of
                                        Limitations

-Kevin Ellison:                         Heck Barred, Statute of
                                        Limitations

-Bradford Farris:                       Heck Barred, Statute of
                                        Limitations

-Stacy Jarrard:                         Heck Barred, Statute of
                                        Limitations

-Chris Carroll:                         Heck Barred, Statute of
                                        Limitations

Other

-Rita Harkins:                          Heck Barred, Statute of
                                        Limitations

8

## I.      Personal Jurisdiction Over the Alabama Defendants

First, the Alabama Defendants—Defendants McGill and Baldwin County, Alabama—argue that the Court lacks personal jurisdiction over them. [Doc. 37]; [Doc. 38]; [Doc. 39]. The Court agrees. "Personal jurisdiction generally entails a two-step inquiry." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). First, courts "determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Id.* (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). Second, courts "examine whether exercising jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Sculptchair*, 94 F.3d at 626); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

"The Eleventh Circuit has held that 'the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process,' but instead 'imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process.'" *Toras Emes Acad. of Miami, Inc. v. Inflow Sols. Ga, LLC*, No. CV 124-038, 2025 WL 723722, at *4 (S.D. Ga. Mar. 6, 2025) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1259 (11th Cir. 2010)). In other words, "courts must

apply the specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." *Id.* (quoting *Diamond Crystal Brands*, 593 F.3d at 1263). Plaintiff has not established either prong of the personal jurisdiction inquiry because Plaintiff has not alleged any facts specifically regarding the Alabama Defendants. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (quoting *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999)).

Even Plaintiff's allegations against "all Defendants" are insufficient to show personal jurisdiction over the Alabama Defendants because they consist mostly of unsupported conclusory statements. For example, Plaintiff alleges that "[a]ll Defendants conspired to violate his civil rights" when they "worked together to falsely arrest him . . . and forced him to pay the child support for states of ALABAMA and GEORGIA." [Doc. 1, ¶ 196]. These conclusory allegations against all 19 Defendants hardly make out a prima facie case for personal jurisdiction over the Alabama Defendants. Plaintiff's other claims against "All Defendants" fail for the same reason. *See* [*id.* at ¶¶ 209–214 (containing conclusory statements regarding an unspecified "false statement")].

10

Plaintiff has not adequately established personal jurisdiction over Defendants McGill

and Baldwin County, Alabama and they are **DISMISSED**.

## II.        Eleventh Amendment, Prosecutorial, and Judicial Immunities

The Court next moves to another jurisdictional threshold issue: immunity. *See*

*Curling v. Sec'y of Georgia,* 761 F. App'x 927, 930 (11th Cir. 2019). All Defendants (other

than Hart County, Georgia, and Lumpkin County, Georgia) assert some sort of

immunity as a defense, either sovereign immunity, qualified immunity, prosecutorial

immunity, or judicial immunity. [Doc. 15]; [Doc. 17]; [Doc. 33]; [Doc. 37]; [Doc. 41]. And

they are all correct; they are shielded from suit by some form of immunity.

First, the Judicial Defendants are entitled to judicial immunity. Judges[1] have

absolute judicial immunity for "acts committed within their jurisdiction." *Imbler v.*

*Pachtman*, 424 U.S. 409, 420, 418 (1976). Immunity applies "even when the judge[s'] acts

are in error, malicious, or were in excess of [their] jurisdiction." *Williams v. Alabama*, 425

F. App'x 824, 826 (11th Cir. 2011). To be stripped of judicial immunity, a judge "must

act despite 'the clear absence of all jurisdiction.'" *Saville v. Webb*, No. 24-10998, 2025 WL

2254239, at *12 n.14 (11th Cir. Aug. 7, 2025) (quoting *Stump v. Sparkman*, 435 U.S. 349,

356 n.6 (1978)). Hearings, rulings, temporary restraining orders, setting bail, contempt

orders, and even removing Plaintiff from the courtroom are all within a judge's

---

[1] This includes administrative law judges. *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 757 (2002).

jurisdiction, and certainly cannot constitute the clear absence of all jurisdiction. Plaintiff

has not shown otherwise.[2] Therefore, Defendant Judges George, Fry, Wasserman, and

Phelps are each entitled to judicial immunity for all of Plaintiff's claims.

Next, the Prosecutor Defendants— Assistant Attorney Generals Hunt, Whetsel,

McFarland, and Assistant District Attorneys Langley, and Mahaffey—are entitled to

prosecutorial immunity. The Eleventh Circuit has "explained that 'a prosecutor enjoys

absolute immunity from allegations stemming from the prosecutor's function as

advocate.'" *Wright v. Pearson*, 747 F. App'x 812, 814 (11th Cir. 2018) (quoting *Hart v.

Hodges*, 587 F.3d 1288, 1295–96 (11th Cir. 2009)). Prosecutorial immunity even "extends

to a prosecutor's conduct during post-conviction proceedings that is 'intimately

associated with the judicial phase of the criminal process.'" *Id.* (quoting *Hart*, 587 F.3d at

1296). Other than one allegation that Defendant Hunt informed Plaintiff that his driver's

license would be suspended, Plaintiff's Complaint contains no non-conclusory factual

allegations regarding the Prosecutor Defendants. *See* [Doc. 1, ¶¶ 28–30, 36–37, 149].

Looking to the other allegations in Plaintiff's Complaint, it appears he is complaining

about the Prosecutor Defendants prosecuting him for the crimes of which he was

indicted and ultimately pled guilty. *See, e.g.,* [*id.* at ¶¶ 215–223]. Therefore, Plaintiff has

not only failed to state a claim against these Defendants, but Defendants Hunt, Whetsel,

---

[2] In fact, Plaintiff's attempts to challenge judicial proceedings or decisions have thus far failed. *See* [Doc. 1, ¶¶ 148, 158].

McFarland, Langley, and Mahaffey are also all entitled to prosecutorial immunity. [*Id.* at ¶¶ 28–30, 36–37].

Finally, to the extent Plaintiff's claims are brought against Defendants in their official capacity, the Court considers sovereign immunity under the Eleventh Amendment.[3] "As a general proposition, the states, as sovereigns, enjoy immunity from lawsuits brought against them without their consent." *Williams v. Bd. of Trustees of the Univ. of Alabama*, 128 F.4th 1208, 1214 (11th Cir. 2025) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000)). That immunity also extends to "'arms of the State.'" *Id.* (citing *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)) (cleaned up). But, there are two exceptions. "First, Congress, acting pursuant to its Fourteenth Amendment enforcement powers, . . . may 'abrogate' states' immunity" by "'unequivocally' expressing its intent to strip the states of their immunity," so long as Congress's use of that authority exhibits "'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Williams*, 128 F.4th at 1214 (citing U.S. Const. amend XIV, § 5). Second, a state "may consent to be sued." *Id.* at 1215.

Sheriffs and their employees are arms of the state. "Under Georgia law, sheriffs are state officials for Eleventh Amendment purposes." *Stanfill v. Talton*, 851 F. Supp. 2d 1346, 1368 (M.D. Ga. 2012) (citing *Manders v. Lee,* 338 F.3d 1304, 1328 (11th Cir. 2003)).

---

[3] Plaintiff purports to bring his claims against Defendants as individuals, but out of an abundance of caution the Court briefly addresses why they cannot be sued in their official capacities. [Doc. 1, ¶ 40].

13

Furthermore, "employees of the sheriff, deputies . . . in their official capacities, are also entitled to Eleventh Amendment immunity." *Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir. 2007) (per curiam). But, counties are not entitled to Eleventh Amendment sovereign immunity. *Galette v. New Jersey Transit Corp.*, 146 S. Ct. 854, 873 (2026) ("the Court has long recognized that cities and counties are not arms of the State despite serving public functions and exercising police powers."). Therefore, absent an exception, the sheriff and sheriff's deputy Defendants—Defendants Albert, Ellison, Farris, Jarrard, and Carroll—are entitled to Eleventh Amendment immunity for acts in their official capacity.

There are no applicable exceptions. "Georgia has expressly waived its immunity from suit for claims sounding in tort and brought in state court, but did not waive immunity from actions brought in federal court." *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*, 692 F.3d 1200, 1204 (11th Cir. 2012) (citing Ga. Code Ann. § 50–21–23(b)).[4] Georgia's sovereign immunity waiver also does not apply to equitable claims against the State. *Georgia Dep't of Cmty. Health v. Data Inquiry, LLC*, 722 S.E.2d 403, 407 (Ga. Ct. App. 2012). Unjust enrichment claims are equitable. *Id.* Therefore, since there

---

[4] Georgia waives its sovereign immunity through the Georgia Tort Claims Act. *See* Ga. Const. art. I, § 2, ¶ IX; Ga. Code Ann. § 50-21-20. The tort claims act does not waive immunity for individuals acting within the scope of their employment and requires substitution of the state itself for individual defendants when the state is liable. Ga. Code Ann. § 50-21-25. Here, Plaintiff has sued both government entities and individuals. [Doc. 1]. To the extent the government would be liable for the suits against individuals, it must be substituted. But, as explained above, those lawsuits cannot be brought in federal court.

are no applicable exceptions, Defendants Albert, Ellison, Farris, Jarrard, and Carroll are entitled to Eleventh Amendment immunity against Plaintiff's state law tort claims and unjust enrichment claims to the extent they are sued in their official capacities.

### III.    The Georgia Counties

Lastly, Plaintiff's claims against the remaining Georgia counties are due to be dismissed. Plaintiff purports to sue Hart County, Georgia and Lumpkin County, Georgia under *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658 (1978). [Doc. 1, pp. 15–17]. But, setting aside Plaintiff's own legal conclusions regarding *Monell* liability, Plaintiff fails to adequately establish *Monell* claims here.

"To state a *Monell* claim, a plaintiff must allege facts showing: (1) that his constitutional rights were violated; (2) that the [counties] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (internal quotation marks and citations omitted). Plaintiff alleged that Defendants "acted in accordance with a policy or custom of Lumpkin and Hart Counties" and these counties maintained "a policy of providing inadequate training for clerks and court staff." [*Id.* at ¶ 238, 239]. Furthermore, he alleges the counties had a "policy of providing inadequate and discriminatory training for clerks and court staff . . . ." [*Id.* at ¶ 242]. But, he has not adequately alleged that the counties had policies or customs that would lead to his constitutional violations because conclusory allegations

are insufficient. *Miller v. Bartow Cty., Ga.*, 478 Fed. App'x. 549, 550 (11th Cir. 2012) (conclusory allegations insufficient); *Harvey v. City of Stuart*, 296 Fed. App'x. 824, 826 (11th Cir. 2008) (same). Therefore, Plaintiff's claims against Defendants Hart County, Georgia, and Lumpkin County, Georgia, fail.

To take stock of what is left: Plaintiff's claims against the Alabama Defendants fail for lack of personal jurisdiction. Plaintiff's claims against the Judicial and Prosecutor Defendants fail because those Defendants are entitled to judicial and prosecutorial immunity, respectively. To the extent Plaintiff brings claims against the Law Enforcement Defendants in their official capacity, those fail too because they are protected by Eleventh Amendment immunity. Finally, Plaintiff's claims against the Georgia Counties—Hart County, Georgia, and Lumpkin County, Georgia—fail to state *Monell* claims. That leaves the Law Enforcement Defendants—Albert Jr., Ellison, Farris, Jarrard, and Carroll—sued in their individual capacity. It also leaves Defendant Harkins.[5] Since all of Plaintiff's claims (other than the *Monell* claim) are against the Law Enforcement officials, the Court now turns to addressing arguments against the claims

---

[5] As the Clerk of Superior Court for Lumpkin County, Georgia, Defendant Harkins is likely entitled to quasi-judicial immunity. *See Wilson v. Coile*, No. 3:22-cv-66 (CAR), 2022 WL 2308406, at *3 (M.D. Ga. June 27, 2022); *see also Hyland v. Kolhage*, 267 F. App'x 836, 842 (11th Cir. 2008). However, Plaintiff's factual allegations are not specific enough to know whether Defendant Harkins' actions were integrally related to the judicial process. *Wilson*, 2022 WL 2308406, at *3 (quoting *Jenkins v. Clerk of Court, U.S. Dist. Court, SO. Dist. of Fla.*, 150 F. App'x 988, 990 (11th Cir. 2005)). Given the nature of Plaintiff's claims, Defendant Harkins' actions likely were related to the judicial process, and therefore entitled to quasi-judicial immunity, but that is not certain on the face of Plaintiff's Complaint.

themselves, specifically relating to the Law Enforcement Defendants and Defendant Harkins.

## II.    Statute of Limitations

Plaintiff's claims related to his arrest, prosecution, and divorce are barred by the statute of limitations. [Doc. 15]; [Doc. 17]; [Doc. 33]; [Doc. 37]; [Doc. 38]; [Doc. 39]; [Doc. 41]. "Federal law . . . determines the date on which the statute of limitations begins to run, and, for a § 1983 action, the statute begins to run from the date the facts supporting a cause of action are apparent or should be apparent to the plaintiff." *Smith v. Mitchell*, 856 F. App'x 248, 249 (11th Cir. 2021). "The limitations period for filing an action under § 1983 is typically determined by the state-law period for personal injury torts, which, in Georgia, is two years." *Smith v. Mitchell*, 856 F. App'x 248, 249 (11th Cir. 2021) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)); *see also* O.C.G.A. § 9-3-33.

Plaintiff expressly brings 42 U.S.C. § 1983 claims in counts I, II, III, V, VI, VII, VIII, IX, XIII, XIV, XVI, XVII. [Doc. 1, pp. 34–50]. Plaintiff's arrest occurred on August 4, 2020. [*Id.* at ¶ 105]. Defendant George held a hearing on a TPO on August 19, 2020. [*Id.* at ¶ 111]. On February 23, 2021, Plaintiff was indicted for aggravated assault, false imprisonment, family violence and cruelty to children in the third degree. [*Id.* at ¶ 124]. Plaintiff's divorce was finalized on July 14, 2022. [*Id.* at ¶ 139]. In short, all of Plaintiff's factual allegations other than those related to his suspended driver's license occurred far more than two years ago. Therefore, all of Plaintiff's claims related to any of his

factual allegations other than his suspended driver's license are time-barred.

Specifically, those are Counts I, II, III, V, VI, VII, VIII, IX, XIII, XIV, XV, and XVII.[6]

Plaintiff's remaining § 1983 claim—Count XVI—is for unjust enrichment, which is

discussed below.

## V.    Plaintiff's Claims are *Heck* Barred

Plaintiff's claims related to his arrest are barred by the doctrine set forth in *Heck*

*v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, "the district court must consider whether

a judgment in favor of the plaintiff would necessarily imply the invalidity of his

conviction or sentence." *Id*. at 486. If a favorable judgment would render a conviction or

sentence invalid, the claim is not cognizable under § 1983 and must be dismissed unless

the conviction or sentence has been invalidated. *Id*. The Eleventh Circuit explained that

"as long as it is possible that a § 1983 suit would not negate the underlying conviction,

then the suit is not *Heck*-barred." *Dyer v. Lee*, 488 F.3d 876, 879-880 (11th Cir. 2007). On

---

[6] The Court briefly addresses Counts IX, XIV, and XV. For Counts, IX and XV, Plaintiff alleges that all Defendants made a "false statement" about him. [Doc. 1, ¶¶ 209, 248]. Although not in his factual background section, Plaintiff details the "false statements" in Count VIII. [*Id.* at ¶¶ 201–207]. Those statements are, specifically, "that Mr. Cleveland engaged in criminal conduct . . . ." [*Id.* at ¶ 203]. They were contained in the "police report and the Lumpkin County website . . . ." [*Id.* at ¶ 201]. To be clear, the date of these false statements is not contained in the Complaint, but they were made by Law Enforcement Defendants, presumably around the time of Plaintiff's arrest, which would make them time-barred. Even if they weren't time-barred, Plaintiff's claims based on these "false statements" fail because the claims were not false—he pled guilty. As for Count XIV, Plaintiff alleges invasion of privacy and public disclosure of private facts. Those, too, presumably come from his arrest and the publications listed above, making them barred by the SOL. If not, then they, too, fail to state a claim because Plaintiff does not have any other underlying factual allegations sufficient to support a claim for invasion of privacy or public disclosure of private facts. To the extent they are state law claims for invasion of privacy, the Court **DECLINES** to exercise supplemental jurisdiction over them as stated below.

18

the other hand, where success in a § 1983 suit "would necessarily negate one of the elements of the underlying offense; under those circumstances a conviction would not stand, as a matter of law," and the suit would be barred under *Heck*. *Id*. at 880.

Plaintiff was convicted—he pled guilty.[7] [Doc. 1, ¶¶ 132–34]. Many of his claims would imply the invalidity of his conviction in some way. Plaintiff challenges the arrest and search underlying his conviction in Counts I, II, IV, V, and VI. [*Id.* at pp. 34–40]. He challenges the validity of the prosecution of his case in Counts X and XI. [*Id.* at pp. 43–45]. Although Plaintiff's arguments that implicate his conviction are many, the Court's overly simplified version is that Defendants conspired to unlawfully arrest Plaintiff, unlawfully search him and his home, and then unlawfully used the legal system to prosecute Plaintiff until he was convicted. Allowing Plaintiff to proceed with any piece of this argument would necessarily imply the invalidity of his conviction.

Consequently, the claims listed above must be dismissed under *Heck* unless Plaintiff's "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-487. There is no evidence of that here. Therefore, Counts I, II, IV, V, VI, X, and XI are *Heck* barred.

---

[7] Plaintiff's Complaint does not make it clear what he pled guilty to. The Court assumes it was a misdemeanor since he was sentenced to 12 months of probation and a $1,000 fine. [Doc. 1, ¶ 135].

## VI.   Supplemental Jurisdiction

To take stock one more time, the remaining Defendants are the Law Enforcement Defendants—Albert Jr., Ellison, Farris, Jarrard, and Carroll—in their individual capacities, and Defendant Harkins. Counts I and II are barred by the SOL and *Heck*. Counts III and IV are barred by the SOL. Counts V and VI are barred by the SOL and *Heck*. Counts VII, VIII, and IX are barred by the SOL. Counts X and XI are barred by *Heck*. Counts XIII, XIV, XV, and XVII are barred by the SOL. That leaves Counts XII, and XVI—Plaintiff's unjust enrichment claims.[8] But, unjust enrichment is a state law claim. *See Ferrier v. N. Sails Grp. LLC*, No. 12-60845-CIV, 2012 WL 1877873, at *2 (S.D. Fla. May 22, 2012) (citing *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999)). Since these claims are all that remain, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims against Defendant[s]." *Brightman v. Robins*, No. 5:13-cv-00468 (LJA), 2016 WL 5662035, at *6 (M.D. Ga. Sept. 29, 2016) (quoting *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997)). Therefore, the Court **DECLINES** to exercise supplemental jurisdiction over Counts XII and XVI.

---

[8] The Court notes that, while these claims are vague, they are presumably Plaintiff's claims regarding his child support payments.

20

## V.      Conclusion

Accordingly, the Court lacks personal jurisdiction over Defendants McGill and Baldwin County, Alabama; Defendants Albert Jr., Ellison, Farris, Jarrard, and Carroll are entitled to Eleventh Amendment immunity for Plaintiff's claims against them in their official capacity; Defendants George, Fry, Wasserman, and Phelps are entitled to judicial immunity; Defendants Hunt, Whetsel, McFarland, Langley, and Mahaffey are entitled to prosecutorial immunity; and Plaintiff failed to establish a *Monell* claim or claims against Hart County, Georgia, and Lumpkin County, Georgia. The claims against Defendants Albert Jr., Ellison, Farris, Jarrard, and Carroll in their individual capacities are either time-barred or barred by *Heck.* With no remaining federal claims, the Court **DECLINES** to exercise supplemental jurisdiction over any remaining state law claims. Therefore, for the many other reasons listed above and in Defendants' motions, the Court **GRANTS** Defendants' motions to dismiss. [Doc. 15]; [Doc. 17]; [Doc. 33]; [Doc. 37]; [Doc. 38]; [Doc. 41].

**SO ORDERED**, this 12th day of June, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**